IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| AFRAM ZAYA KHANANISHO, | ) |
| | ) Case No. 07 cv 7211 |
| Plaintiff, | ) |
| | ) |
| v. | ) Judge John W. Darrah |
| | ) |
| MICHAEL CHERTOFF, Director, | ) |
| Department of Homeland Security; and | ) |
| ROBERT S. MUELLER, III, Director, | ) |
| Federal Bureau of Investigations, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff has filed this action for mandamus against Michael Chertoff, Director of the Department of Homeland Security, and Robert S. Mueller, Director of the Federal Bureau of Investigations (the "FBI"), alleging Defendants have violated the Administrative Procedure Act ("APA") in unlawfully withholding or unreasonably delaying the processing of his Form N-400 Application for Naturalization. Before the Court is Defendants' Motion For Summary Judgment (Doc. 18). Plaintiff also moves for summary judgment and an order directing Defendants to adjudicate his application. The motions are fully briefed.[1] For the reasons stated below, both Defendants' and Plaintiff's motions are denied.

## LEGAL STANDARD

Summary judgment "should be rendered if the pleadings, the discovery and

---

[1] Defendants were allowed until July 8, 2008, to file a reply. However, no reply was filed.

1

disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In determining summary judgment motions, "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, __ U.S. __, 127 S. Ct. 1769, 1776 (2007). The party seeking summary judgment has the burden of establishing the lack of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once a properly supported motion for summary judgment is made, the nonmoving party cannot rest on conclusory pleadings but must "set forth specific facts in affidavits or otherwise to show that there is a genuine issue of material fact that must be decided at trial." *Colan v. Cutler-Hammer, Inc.*, 812 F.2d 357, 361 (7th Cir. 1987).

## BACKGROUND

The Court derives the background facts from the parties' statements made pursuant to Local Rule 56.1.[2]

---

[2] Local Rule 56.1(a)(3) requires the moving party to provide "a statement of material facts as to which the party contends there is no genuine issue for trial." *Ammons v. Aramark Uniform Servs., Inc.*, 368 F.3d 809, 817 (7th Cir. 2004). Local Rule 56.1(b)(3) requires the nonmoving party to admit or deny every factual statement proffered by the moving party and to concisely designate any material facts that establish a genuine dispute for trial. *See Schrott v. Bristol-Myers Squibb Co.*, 403 F.3d 940, 944 (7th Cir. 2005). A litigant's failure to respond to a Rule 56.1 statement results in the Court's admitting the uncontroverted statement as true. *Raymond v. Ameritech Corp.*, 442 F.3d 600, 608 (7th Cir. 2006).

2

Based on the parties' statements, the following relevant facts are not in dispute. Plaintiff is a citizen of Syria and became a lawful permanent resident of the United States on October 30, 2001. (Def. Statement of Material Facts ("SMF"), ¶ 1.) Plaintiff obtained this status as the beneficiary of a family-based visa petition filed by his U.S. citizen parent. (SMF, ¶ 1.)

Plaintiff filed a Form N-400 Application for Naturalization with the Department of Homeland Security, Citizenship and Immigration Services Division ("USCIS"), in Lincoln, Nebraska on September 11, 2006. (SMF, ¶ 4.) Plaintiff's application was fee-paid and indicates he seeks naturalization as a five-year lawful permanent resident, not in military service. (SMF, ¶ 1.)

When an alien applies for naturalization, USCIS conducts several forms of security and background checks. (SMF, ¶ 17.) These background checks include: (1) an FBI fingerprint check; (2) a check against the Interagency Border Inspection System ("IBIS"); and (3) a name check, which is performed for USCIS by the FBI, using FBI investigative databases.

In April 2006, USCIS initiated a policy of not scheduling naturalization applicants for interview until the FBI name check is completed. (SMF, ¶ 16.) Once the background check is completed, the applicant is scheduled for an interview. After the interview, the application is adjudicated by a district office. (SMF, ¶¶ 8, 9.)

Plaintiff's preliminary IBIS and fingerprint checks have been performed. (SMF, ¶ 21.) Plaintiff's name check request was electronically submitted to the FBI on December 4, 2006, less than a week after his application was filed. (SMF, ¶ 20.) The

3

FBI acknowledged receipt of the name check request on December 14, 2006. However, to date, the name check has not been performed. Thus, as mentioned, under the procedure in place for naturalization applications, Plaintiff cannot be scheduled for an interview on his naturalization application until the name check results are received from the FBI.

There is also no dispute that there is a serious name check backlog problem with the FBI. Defendants attach to their motion an April 25, 2008 USCIS-FBI joint plan for elimination of the name check backlog and affidavit evidence to demonstrate steps that USCIS and the FBI have taken to address the problem. Under this plan, the target date for processing name checks like Plaintiff's, that have been pending more than one year but less than two years, is November 2008. (SMF, ¶ 24.)[3]

## ANALYSIS

Defendants argue Plaintiff cannot sue for mandamus because he has no clear right to compel the FBI to process his application faster, and a court can order mandamus relief only where the agency owes a "clear, nondiscretionary duty." (Def. Br. at 10.) Defendants point out that, under the policy in place with respect to applications for naturalization filed after April 2006, USCIS cannot take action on the application until receipt of the FBI's name check, and Plaintiff is merely one of many waiting in a serious backlog of cases with the FBI. Defendants acknowledge the process is not ideal and point to the initiatives the FBI has taken to change its procedures to process name checks

---

[3] For change-of-status (rather than naturalization) applications, interviews can now proceed before the name check is complete. (Def. Mem., Ex. 3.)

more expeditiously. However, Defendants contend Plaintiff cannot compel Defendants to process his application more quickly than others simply because he has brought a mandamus lawsuit. Defendants argue that the background check is an important component in the naturalization process, deference should be given to the investigative agencies involved, and Plaintiff has not established that the delay he has experienced is so unreasonable that his application should be moved to the front of the line. Defendants point out that, unlike many change-of-status applicants seeking to obtain the status of lawful, permanent resident, Plaintiff is a lawful, permanent resident and is free to work and travel within the United States while his naturalization application is pending.

In his opposition brief, Plaintiff argues that mandamus relief is available to him, pointing to a number of cases – including several in this district – holding that USCIS has a nondiscretionary duty to adjudicate immigration applications within a reasonable period of time under the APA; and this duty to adjudicate supports a mandamus action. (*See* Pltf.'s Response at 2-3.) Plaintiff argues that USCIS's use of the FBI to perform background checks does not immunize USCIS from its responsibility to adjudicate applications. Plaintiff points to the fact that USCIS has changed its procedure with respect to change-of-status applications (so that the interview may now proceed prior to the completion of the FBI name check) as evidence that his application for naturalization should also be scheduled for an interview. Plaintiff therefore concludes that summary judgment should be entered in his favor, and the Court should order Defendants to adjudicate his petition or set a deadline for that to occur.

District courts have "jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361. Mandamus relief will be granted if three enumerated conditions exist: (1) there is a clear right to the relief sought; (2) the defendant has a duty to do the act in question; and (3) no other adequate remedy is available. *Iddir v. INS*, 301 F.3d 492, 499 (7th Cir. 2002). The APA requires: "With due regard for the convenience and necessity of the parties or their representatives and within a reasonable time, each agency shall proceed to conclude a matter presented to it." 5 U.S.C. § 555(b). The Court is empowered to "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706.

Thus, for the Court to have jurisdiction under both the Mandamus Act and the APA, Defendants must have a clear, nondiscretionary duty to adjudicate Plaintiff's N-400 naturalization application. USCIS is charged with the duty to determine naturalization applications. *See* 8 C.F.R. § 316.14(b) ("[The Service] . . . shall determine whether to grant or deny the application and shall provide reasons for the determination.") As courts in this district have held, USCIS thus has a clear, nondiscretionary duty to adjudicate immigration applications within a reasonable period of time. *See He v. Chertoff, et al.*, 528 F. Supp.2d 879 (N.D. Ill. 2008); *Khelashvili v. Dorochoff, et al.*, No. 07cv 2826, 2007 WL 4293634 (N.D. Ill. Dec. 6, 2007) (*Khelashvili*); *El Masri v. Dorchoff, et al.*, 07 5379, slip op. at 1 (N.D. Ill. Feb. 25, 2008) (*El Masri*) (attached as Exhibit 1 to Defendants' Brief). In particular, the following reasoning of Judge Andersen in *Khelashvili* is persuasive:

6

> Although we acknowledge that a number of courts have found no duty to process applications . . . , in the absence of authority from the Seventh Circuit or Supreme Court, we are persuaded by the reasoning of an equal number of courts finding in favor of subject matter jurisdiction and a nondiscretionary duty to adjudicate. These courts have held that the USCIS has a nondiscretionary duty to adjudicate adjustment applications and that this duty supports a mandamus action. Without mandamus relief, USCIS could choose to fail to process applications indefinitely, leaving applicants in a 'state of limbo' and without recourse. The court, therefore, finds that the plaintiffs have properly stated a claim for mandamus relief because the defendants have a nondiscretionary duty to adjudicate applications . . . , and the plaintiffs have a corresponding right to have those applications processed.
>
> The court further finds that the [Administrative Procedure Act] imposes a duty upon USCIS not only to process applications . . ., but to do so within a reasonable time. The APA states that 'within a reasonable time, each agency shall proceed to conclude a matter presented to it.' Although [neither] 8 U.S.C. § 1255, nor the APA specifies a time by which an adjudication should be made, we agree with courts that have held that 'by necessary implication' the adjudication must occur within a reasonable time. It could not have been the intent of Congress to allow the agency to withhold performance of its duty indefinitely. 'There are too many important rights associated with permanent resident status to allow the speed at which these applications are processed to go entirely unchecked.'

*Khelashvili*, 2007 WL 4293634 at *2 (citations omitted).

*Khelashvili*'s reasoning as to change-of-status applications applies equally to the issue of delay in processing applications for naturalization presented here. *See El Masri*, 07 5379, slip op. at 2 (recognizing right to sue in mandamus for delay in processing naturalization application). Accordingly, considering, *inter alia*, the reasoning of Judge Andersen in *Khelashvili*, Plaintiff here has a clear right to the adjudication of his naturalization application within a reasonable time, and a mandamus action is proper. Some courts have found there is no clear duty for USCIS to act in naturalization cases on the basis of a spending law enacted by Congress in 1997 prohibiting USCIS from

7

expending any funds on naturalization applications until the FBI completes its name check. See e.g., *Antonishin v. Keisler*, No. 06 CV 2518, 2007 WL 2788841, at *6-7 (N.D. Ill. Sept. 20, 2007); *Sinha v. Upchurch*, No. 07 CV 2274, 2007 WL 4322225, at *4 (N.D. Ohio Dec. 7, 2007). However, other courts have persuasively reasoned that Congress's conditioning USCIS's action on the FBI's completion of the name check demonstrates congressional intent that the FBI act within a reasonable time. *See, e.g., Kaplan v. Chertoff*, 481 F. Supp.2d 370, 400 (E.D. Pa. 2007) (*Kaplan*) ("Under these limited circumstances, where Congress has conditioned CIS's mandatory action on the FBI's completion of background checks, and where applicants must pay the FBI, through CIS, to complete the background checks, the Court has, by implication, imposed on the FBI a mandatory duty to complete the background checks.") The reasoning of the latter cases, such as *Kaplan*, is more persuasive. Statutes must be read "*in pari delicto*" and harmonized where possible. *Matter of Johnson*, 787 F.2d 1179, 1181 (7th Cir. 1986). If there is no duty for the FBI to act on an application, then Congress's directive that USCIS determine naturalization applications within a reasonable time would be rendered meaningless and Congress's clear intent frustrated.

Nevertheless, it cannot be determined now that the delay in the processing of Plaintiff's application is unreasonable. Although there is no dispute that Plaintiff's application has been pending with USCIS since September 11, 2006, and his name check has been pending with the FBI since December 2006, the submitted evidence does not indicate whether Plaintiff's name check has been slated for completion, or whether it is likely to be completed on or near the new two-year target date. Furthermore, the parties

8

have not addressed the factors typically considered in making an assessment of the reasonableness of agency delay. *See, e.g., Kousar v. Mueller, et al.*, 549 F.Supp.2d 1194, 1198 (N.D. Cal. 2008) (what constitutes a reasonable time for adjudicating immigration applications depends on the facts of each case, and a number of factors are considered). Courts have considered the following six-factor test:

> (1) the time agencies take to make decisions must be governed by a rule or reason; (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply the context for this rule of reason; (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake; (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority; (5) the court should also take into account the nature and extent of the interests prejudiced by the delay; and (6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.

*See id.*

Therefore, whether or not the period of delay and the reasons therefor in Plaintiff's case are unreasonable in the context of these factors presents a genuine issue of material fact.

## CONCLUSION

For the reasons stated above, Defendants' and Plaintiff's motions for summary judgment are denied.

Date: 12-10-08

John W. Darrah
United States District Court Judge

9